**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

WILLIAM WILFRIDO SISALEMA REA,

                                        Petitioner,

    v.                                                              9:26-cv-01248 (AMN)

MICHAEL BALL, *in his official capacity as*
*Acting Deputy Field Office Director, Buffalo Field*
*Office, U.S. Immigration & Customs Enforcement*;
DAVID VENTURELLA, *in his official capacity*
*as Acting Director, U.S. Immigration & Customs*
*Enforcement*; MARKWAYNE MULLIN, *in his*
*official capacity as U.S. Secretary of Homeland*
*Security*; TODD BLANCHE, *in his official*
*capacity as Acting U.S. Attorney General*;

                                        Respondents.

---

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

On June 17, 2026, United States Immigration and Customs Enforcement ("ICE") officers arrested Petitioner William Wilfrido Sisalema Rea in Plattsburgh, New York and detained him at the Buffalo Federal Detention Facility.  Dkt. No. 7-2 at 2-3; Dkt. No. 4.[1]

That same day, Petitioner filed an emergency petition for a writ of habeas corpus in the Northern District of New York pursuant to 28 U.S.C. § 2241, seeking, *inter alia*, Petitioner's immediate release.  Dkt. No. 1 ("Petition").  The Court subsequently issued an order directing Respondents to show cause as to why the Petition should not be granted and enjoined Respondents

---

[1] Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system.

from moving Petitioner outside the jurisdiction of the Northern and Western Districts of New York during the pendency of this matter.  Dkt. Nos. 2, 6.

For the reasons set forth below, the Court grants Plaintiff's Petition.

## II.    BACKGROUND

Petitioner is a native and citizen of Ecuador.  Dkt. No. 1 at ¶ 2; *see also* Dkt. No. 7-1 at 1. On or about April 27, 2024, Petitioner and his family initially entered the United States without inspection, admission, or parole near San Diego, California.  Dkt. No. 7-2 at 3.  They were apprehended shortly thereafter and ultimately released from custody by Order of Recognizance pending their immigration hearing due to "lack of bed space" and because Petitioner and his family "do not appear to be a threat to national security, border security, or public safety."  *See* Dkt. No. 7-1 at 3-4; *see also* Dkt. No. 7-6 (Order of Release on Recognizance); Dkt. No. 7-5 (Notice to Appear).  On April 22, 2025, Petitioner filed an application for asylum, which is currently pending.  *See* Dkt. No. 7-2 at 3.  Petitioner's individual asylum hearing is scheduled for April 25, 2028 in Chelmsford Immigration Court.  *Id.*; *see also* Dkt. No. 1 at ¶ 7.

On June 17, 2026, ICE officers encountered Petitioner in Plattsburgh, New York during a targeted enforcement operation.  *See* Dkt. No. 7-2 at 2-3.  Specifically, Petitioner was observed departing the ferry traveling from Grand Isle, Vermont to Plattsburgh, New York and was apprehended while he was traveling by car to a construction site in the Plattsburgh area.  *Id.* at 2-3.  Petitioner is employed at Five Star Roofing in Vermont and claims to have traveled to Plattsburgh for a construction project at the Comfort Inn near Consumer Square.  *Id.* at 2, 4.  ICE officers then conducted a warrantless arrest of Petitioner during the traffic stop.  *Id.* at 3.

After taking Petitioner into custody that same day, ICE subsequently executed an I-200 Warrant of Arrest, *see* Dkt. No. 7-3, and a deportation officer executed a Form I-286 Notice of

Custody Determination, indicating that Petitioner was to be detained pending a final administrative determination in his immigration proceedings. *See* Dkt. No. 7 at 2; *see also* Dkt. No. 7-4 (Custody Determination Form). Petitioner was advised of his right to seek review of the custody determination but declined to make an election. *See* Dkt. No. 7 at 2; *see also* Dkt. No. 7-4 (noting Petitioner's refusal to sign the Notice of Custody Determination form). In other words, Petitioner neither affirmatively requested nor affirmatively declined an immigration judge's review of his custody determination. Petitioner has no criminal history. Dkt. No. 7-1 at 3; Dkt. No. 7-2 at 3.

### III.     LEGAL STANDARD

Pursuant to 28 U.S.C. § 2241, a district court is authorized to "grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). It is well-settled that "[n]oncitizens are also entitled to challenge through habeas corpus the legality of their ongoing detention." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (citing *Boumediene v. Bush*, 553 U.S. 723, 771 (2008)). "The 'necessary scope' of this review and resulting relief 'in part depends upon the [procedural] rigor of any earlier proceedings.'" *Id.* (alteration in original) (quoting *Boumediene*, 553 U.S. at 781). And "[t]he Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review." *Id.* (first quoting *Boumediene*, 553 U.S. at 781-83, 786; and then citing *I.N.S. v. St. Cyr*, 533 U.S. 289, 301-02 (2001)).

### IV.     DISCUSSION

#### A.  Statutory Authority

Petitioner asserts that ICE detained him without an individualized custody determination, and that his continued detention thereby violates his due process rights under the Fifth Amendment.

3

Dkt. No. 1 at 8-9. As an initial matter, Respondents concede that the Second Circuit recently held that Section 1225(b)(2)(A) does not authorize mandatory detentions in certain circumstances, but contend that the Circuit "d[id] not address the distinct custody posture presented here, where Petitioner was initially encountered at or near the border shortly after entry, processed under [Section] 1225(b)(1), released from custody, and later re-apprehended and detained." Dkt. No. 7 at 2. While *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026) concerned a petitioner who did not encounter border control agents upon his entry into the United States (i.e., he was not processed under Section 1225(b)(1)), this factual distinction has no bearing on the Circuit's reasoning. The Circuit made clear that "Section 1226(a) plainly applies to noncitizens," like Petitioner, "who are present in the United States, but charged as inadmissible for entering the country without inspection and admission." *Id.* at 73. The Circuit affirmed that, "once an alien enters the country, the legal circumstance changes, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 86 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)) (alterations omitted).

Accordingly, because Petitioner has been living continuously in the United States for over two years and has a pending asylum application, he is not "seeking admission" into the country. Thus, Petitioner's detention is governed by Section 1226(a), not Section 1225(b)(2)(A). *See id.* at 96; *see, e.g.*, *Torrez Arce v. Blanche*, No. 26-cv-501, 2026 WL 1430509, at *2 (N.D.N.Y. May 21, 2026) (petitioner paroled approximately two years before his arrest was not "seeking admission"); *Aguiar Olivares v. ICE Custodian*, No. 26-cv-203 (AMN), 2026 WL 686090, *7 (N.D.N.Y. Mar. 11, 2026) (same, where petitioner was paroled into the country more than two years prior and whose asylum application remained pending and collecting cases); *Aldaz v. Ice Field Off. Dir.*, No. 26-cv-439 (AMN), 2026 WL 936167, at *3 (N.D.N.Y. Apr. 7, 2026) (noting that "Section

1225(b)(2)(A) authorizes the Government to detain certain aliens seeking admission into the country, while Section 1226(a) authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings." (internal quotation marks and citations omitted)).

Respondents further contend that even if Petitioner's detention is governed under Section 1226(a), an individual custody determination was not necessary in this case because Respondents possessed independent statutory authority under 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(i) to lawfully detain Petitioner without a warrant given the volume of morning traffic where the stop was conducted and after determining that Petitioner was likely to escape before a warrant could be obtained. *See* Dkt. No. 7 at 3. "Section 1357(a)(2) provides ICE with limited authority to conduct warrantless arrests." *Curimilma Quille v. Blanche*, No. 26-cv-2818, 2026 WL 1453889, at *5 (E.D.N.Y. May 22, 2026); *see also Yeleshev v. Larocco*, No. 26-cv-2294, 2026 WL 1353806, at *3 (E.D.N.Y. May 14, 2026) ("Except in the limited circumstances permitting warrantless arrests (which often all turn on the existence of exigent circumstances), due process does not tolerate arrest first and charge later schemes[.]"). "Specifically, ICE must obtain a warrant before arresting a noncitizen unless the officer 'has reason to believe that the [noncitizen] is in the United States in violation of any such law or regulation *and* is likely to escape before a warrant can be obtained for his arrest.'" *Curimilma Quille*, 2026 WL 1453889, at *5 (quoting 8 U.S.C. § 1357(a)(2)) (emphasis in original); *see also* 8 C.F.R. § 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained."). "ICE officers must satisfy both prongs to establish probable cause to effect a warrantless arrest." *B.D.A.A. v. Bostock*, No. 25-cv-2062, 2025 WL 3484912, at *7 (D. Or. Dec. 4, 2025).

Respondents claim that the arresting ICE officer determined that Petitioner posed a flight risk due to his "lack of local ties, unauthorized employment, and out-of-state vehicle registration." Dkt. No. 7 at 3. However, the facts in the record demonstrate the opposite. Petitioner was apprehended in a Vermont-registered vehicle during his commute to a construction site near Plattsburgh, New York. Dkt. No. 7-2 at 2-4 (noting that Petitioner is employed by Five Star Roofing located in Vermont and claims to be traveling to a construction project currently underway at the Comfort Inn near Consumer Square). ICE officers observed Petitioner departing the ferry traveling from Grand Isle, Vermont to Plattsburgh, New York. *Id.* at 2; Dkt. No. 1 at ¶ 8. "[T]he mere fact that [Petitioner] was driving a car in a neighboring state [i]s insufficient to conclude that [he] posed a flight risk." *Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1233 (D. Colo. 2025). Petitioner has integrated himself into the community. He has familial ties in the United States and has maintained employment. *See* Dkt. No. 7-2 at 3 (noting that Petitioner initially entered the United States with a family unit, who were collectively apprehended and subsequently released from custody pending their immigration court date). Moreover, Petitioner has no criminal record and a documented history of lawful interaction with immigration officials. *See id.*; Dkt. No. 1 at ¶ 6 (noting that Petitioner complied with all instructions to report to ICE, including an electronic check-in on June 27, 2025). Petitioner was followed by immigration officers on his way to work, and when confronted by the officers, presented valid U.S. Government identification and was fully cooperative with the officers. *See* Dkt. No. 7-2 at 3 (noting that Petitioner presented ICE officers with a Vermont-issued state ID card, admitted to having crossed into the United States at an earlier date, and stated that he had a pending immigration court date). "No twist of logic or sophistry can transform him into a potential escapee." *Alfaro v. Mullin*, No. 26-cv-766, 2026 WL 734348, at *5 (E.D.N.Y. Mar. 16, 2026) (finding that a warrantless arrest pursuant to Section 1357 and 8 C.F.R.

§ 287.8(c)(2)(ii) under similar circumstances "was plainly illegal").

For these reasons, Respondents fail to demonstrate that they satisfied the requirements of Section 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii).[2]

### B. Due Process

The Court also finds that Petitioner's due process rights were violated. Courts apply the three-factor balancing test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to determine the adequacy of process in the context of civil immigration confinement. *See J.U. v. Maldonado*, 805 F. Supp. 3d 482, 497 (E.D.N.Y. 2025) (citing *Velasco Lopez*, 978 F.3d at 851). The three factors are: "(1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Gaspar v. Akshar*, No. 9:26-cv-118, 2026 WL 699369, at *8 (N.D.N.Y. Feb. 17, 2026) (quoting *Velasco Lopez*, 978 F.3d at 851 (quoting *Matthews*, 424 U.S. at 335)).

Regarding the first factor, Petitioner has established a liberty interest in being released from imprisonment. Petitioner's private interest "is the most significant liberty interest there is—the interest in being free from imprisonment." *Black v. Decker*, 103 F.4th 133, 151 (2d Cir. 2024) (quoting *Velasco Lopez*, 978 F.3d at 851). "And Petitioner's liberty interest is even more heightened because the deprivation of his liberty does not stem from any criminal

---

[2] The fact that Petitioner declined to make an election regarding whether to seek review of his initial custody determination is irrelevant because Petitioner's initial custody determination was "procedurally deficient on its face." *Pastrana-Beltran v. Mullin*, No. 26-cv-2657, 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026).

adjudication." *Nany v. Blanche*, No. 26-cv-1187, 2026 WL 1842635, at *4 (W.D.N.Y. June 26, 2026).

As to the second factor, the record demonstrates that no individualized determination was made prior to or contemporaneously with the decision to detain Petitioner, and there has been no change in circumstances from the time that Petitioner was released by Order of Recognizance in April 2024 to the time of his re-arrest and detention on June 17, 2026. *See, e.g.*, *Mendez v. Field Off. Dir.*, No. 26-cv-337, 2026 WL 734347, at *4 (N.D.N.Y. Mar. 16, 2026) ("[T]here is nothing in the record indicating that . . . there were changed circumstances between when [petitioner] was released on her own recognizance into the United States and when she was arrested that support the change in her detention status"). Petitioner has continuously conducted himself in a lawful manner since entering the United States and has no criminal record. *See* Dkt. No. 7-1 at 3; Dkt. No. 7-2 at 3. Thus, there is a high risk of erroneous deprivation of Petitioner's liberty. *See Valdez v. Joyce*, 803 F. Supp. 3d 213, 218 (S.D.N.Y. 2025) ("Petitioner's re-detention without any change in circumstances or procedure establishes a high risk of erroneous deprivation of his protected liberty interest.").

Regarding the third factor, while the Government has a strong interest in ensuring the appearance of noncitizens at future immigration proceedings and preventing danger to the community, "the Government has not articulated an interest in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight." *Velasco Lopez*, 978 F.3d at 854. In this case, the Court finds that the Government's interest is minimal where Petitioner has been living in the United States for over two years, his asylum application is still pending, and the Government has presented no evidence that Petitioner is a danger to the community or a flight risk. *See supra* Section IV(A). Moreover, the Government's interest here is even less weighty because

8

Petitioner has no criminal record.  *See* Dkt. No. 7-1 at 3; Dkt. No. 7-2 at 3.

### C.  Appropriate Remedy

"Habeas is at its core a remedy for unlawful executive detention" and "[t]he typical remedy for such detention is, of course, release."  *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citations omitted).  Respondents summarily assert that a bond hearing, rather than immediate release, is the more appropriate remedy.  *See* Dkt. No. 7 at 4.

The Court disagrees.  The appropriate remedy based on the facts presented is Petitioner's immediate release.  *See Parra v. Favro*, No. 26-cv-363 (AMN), 2026 WL 1030870, at *7 (N.D.N.Y. Apr. 16, 2026) (collecting cases).

### V.     CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Petition for a writ of habeas corpus, Dkt. No. 1, is **GRANTED**; and the Court further

**ORDERS** that Respondents shall **immediately release Petitioner from custody**; and the Court further

**ORDERS** that Respondents shall certify compliance with this Order by filing a status report by 12:00 p.m. on July 3, 2026; and the Court further

**ORDERS** that Petitioner shall not be re-detained without adequate notice and without an opportunity to be heard at a hearing where Respondents will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a) and the burden to demonstrate by clear and

convincing evidence that Petitioner is either a danger to the community or a flight risk;[3] and the

Court further

**ORDERS** that pending the issuance of any final removal order against Petitioner,

Respondents are also enjoined from denying him bond in any subsequent proceeding on the basis

that he must be detained pursuant to 8 U.S.C. § 1225(b), absent a change in relevant circumstances.

**IT IS SO ORDERED.**

Dated: July 2, 2026
      Albany, New York

Anne M. Nardacci
U.S. District Judge

---

[3] The Court joins other courts in this district in finding that absent "any individualized assessment or identifiable government interest regarding Petitioner's initial detention, due process requires that the Government bear the burden of demonstrating dangerousness or flight risk by clear and convincing evidence at any bond hearing." *Hassan v. Bondi*, No. 26-cv-319, 2026 WL 891602, at *6 (N.D.N.Y. Apr. 1, 2026) (citing *Lieogo v. Freden*, No. 25-cv-6615, 2025 WL 3290694, at *5-6 (W.D.N.Y. Nov. 26, 2025)); *see also Quintanilla v. Decker*, No. 21-cv-417, 2021 WL 707062, at *3 (S.D.N.Y. Feb. 22, 2021) (joining the "overwhelming consensus of judges in this District in concluding that the Government should bear the burden to deny liberty at any Section 1226(a) bond hearing, regardless of the noncitizen's length of detention" (internal quotation marks omitted)).